# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| GREGORY S. PETROSIAN,<br><br>      Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC;<br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>TRANS UNION, LLC; AMERICAN EXPRESS<br>COMPANY,<br><br>      Defendants. | Civil Action No. 1:23-cv-1334 |

## COMPLAINT

Plaintiff Gregory S. Petrosian files this Complaint against Defendants Equifax Information Services, LLC; Experian Information Solutions, Inc.; Trans Union, LLC; and American Express Company. In support of his claims, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.

2. Plaintiff is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

4. The FCRA's purpose is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

5. To achieve this purpose, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6. As a result of identity theft, Plaintiff's credit report included an American Express credit card account that did not belong to him. After Plaintiff disputed the inaccurate information to Equifax, Experian, and Trans Union, they each failed to conduct reasonable investigations and delete the inaccurate information from Plaintiff's credit reports.

7. Accordingly, Plaintiff alleges claims against Equifax, Experian, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of § 1681e(b), and for failing to fulfill its reinvestigation duties in violation of § 1681i.

8. Plaintiff also alleges claims against American Express for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). In fact, rather

4. The FCRA's purpose is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

5. To achieve this purpose, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6. As a result of identity theft, Plaintiff's credit report included an American Express credit card account that did not belong to him. After Plaintiff disputed the inaccurate information to Equifax, Experian, and Trans Union, they each failed to conduct reasonable investigations and delete the inaccurate information from Plaintiff's credit reports.

7. Accordingly, Plaintiff alleges claims against Equifax, Experian, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of § 1681e(b), and for failing to fulfill its reinvestigation duties in violation of § 1681i.

8. Plaintiff also alleges claims against American Express for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). In fact, rather

than remove its inaccurate reporting, American Express elected to sue Plaintiff in state court in Virginia. That action remains pending despite Plaintiff's several disputes.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

11. Plaintiff is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c).

12. Experian is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13. Equifax is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14. Trans Union is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15. American Express Company is a foreign corporation headquartered in New York, New York. It is a "furnisher" as governed by the FCRA.

## FACTS

16. In March 2023, Plaintiff learned that he was the victim of identity theft after American Express sued him in the General District Court of Fairfax County.

17. Researching the basis for the lawsuit, Plaintiff learned that someone had used his name and social security number to open a credit card account at American Express.

18. Plaintiff did not authorize the opening of that account.

19. Plaintiff did not perform any transactions on that account.

20. And Plaintiff did not benefit from any transactions performed on that account.

21. On April 10, 2023, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

22. Plaintiff also provided the Identity Theft Report with the Federal Trade Commission to American Express, which acknowledged its receipt in writing to Plaintiff.

23. Yet, despite its notice of the fraudulent account, American Express: (i) refused to drop its pending lawsuit; and (ii) continued to report the account to the credit reporting agencies.

24. As to its reporting, American Express reported the account as charged off in an amount close to $14,000.

25. Plaintiff mailed dispute letters to Equifax, Experian, and Trans Union on or about May 8, 2023.

26. Plaintiff's letters explained that he was the victim of identity theft and that he did not open the American Express account.

27. Plaintiff's letters also alerted Equifax, Experian, and Trans Union to a Glendale, California address on his reports that did not belong to him, as well as a variation of the spelling of his last name that was inaccurate.

28. Upon information and belief, Equifax, Experian, and Trans Union forwarded notification of Plaintiff's dispute to American Express.

29. American Express understood Plaintiff's disputes.

30. Upon information and belief, American Express did not investigate its correspondence and communications with Plaintiff to determine whether he had in fact opened the account.

31. Instead, it performed only a cursory review. For example, American Express did not review the account's opening documents or review the transactions to verify what Plaintiff stated in his dispute was true. Ultimately, American Express verified its previous inaccurate reporting, including that Plaintiff was personally liable for the account.

32. Once Equifax, Experian, and Trans Union received American Express's response to Plaintiff's dispute, they relied entirely on American Express's investigation and conducted no other investigation into Plaintiff's dispute.

33. Consequently, Plaintiff's credit reports continued to show the fraudulent account.

34. On or about June 8, 2023, Trans Union responded to Plaintiff's dispute.

35. Trans Union's response deleted the inaccurate spelling of Plaintiff's last name but otherwise verified its reporting of the American Express account as accurate.

36. Equifax and Experian did not respond to Plaintiff's dispute.

37. In the meantime, Plaintiff contacted American Express and requested: (i) the account opening documents, including the application; and (ii) account statements.

38. On June 23, 2023, American Express responded, explaining that it could not provide Plaintiff with a copy of his purported application.

39. On June 27, 2023, American Express sent a separate response, enclosing the account statements.

40. Those statements were purportedly sent to an address affiliated with a business called "Glam Nail Bar & Lounge."

41. Many if not most of the transactions listed on the statements were performed at merchants in Glendale, California.

42. Plaintiff, of course, resides and at all times relevant resided in Reston, Virginia.

43. Plaintiff mailed follow-up dispute letters to Equifax, Experian, and Trans Union on or about July 13, 2023.

44. Those letters again explained that Plaintiff was the victim of identity theft and that he did not open the American Express account.

45. Plaintiff noted that American Express had sent him documents affiliated with the account, and he offered to provide those to Equifax, Experian, and Trans Union upon request.

46. Upon information and belief, Equifax, Experian, and Trans Union forwarded notification of Plaintiff's second dispute to American Express.

47. Upon information and belief, American Express again failed to conduct a thorough investigation to determine whether Plaintiff had in fact opened the account.

48. Instead, it performed only a cursory review. For example, American Express did not review the account's opening documents or review the transactions to verify what Plaintiff stated in his dispute was true. Ultimately, American Express verified its previous inaccurate reporting, including that Plaintiff was personally liable for the account.

49. Once Equifax, Experian, and Trans Union received American Express's response to Plaintiff's dispute, they relied entirely on American Express's investigation and conducted no other investigation into Plaintiff's dispute.

50. Trans Union responded to Plaintiff's second dispute on or about July 20, 2023, stating that it had already verified the disputed account.

51. Equifax responded to Plaintiff's second dispute on or about July 22, 2023. Equifax verified its reporting of the American Express account.

52. Experian responded to Plaintiff's second dispute on or about August 8, 2023. Experian deleted the American Express account.

53. Plaintiff then mailed third dispute letters to Equifax and Trans Union on or about August 30, 2023.

54. Upon information and belief, Equifax and Trans Union forwarded notification of Plaintiff's third dispute to American Express.

55. Upon information and belief, American Express again failed to investigate and determine whether Plaintiff had opened the account.

56. Instead, it performed only a cursory review. For example, American Express did not review the account's opening documents or review the transactions to verify what Plaintiff stated in his dispute was true. Ultimately, American Express verified its previous inaccurate reporting, including that Plaintiff was personally liable for the account.

57. Once Equifax, Experian, and Trans Union received American Express's response to Plaintiff's dispute, they relied entirely on American Express's investigation and conducted no other investigation into Plaintiff's dispute.

58. The inaccurate reporting of the American Express account remains on Plaintiff's credit reports.

59. As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a decreased credit score, credit denials, and emotional distress.

***Defendants' FCRA Violations Were Willful***

60. As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

61. Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once American Express responded to Plaintiff's disputes, verifying that the account belonged to him, and no Equifax, Experian, and Trans Union employees took any other steps after American Express responded to Plaintiff's disputes.

62. Instead, Equifax, Experian, and Trans Union blindly accepted American Express's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit report.

63. Equifax, Experian, and Trans Union continue the practice of parroting the response from its furnishers even though it has been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

64. Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase its operating expenses.

65. Instead, Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs and increase profits. Accordingly, Equifax's, Experian's, and Trans Union's violations of the FCRA were willful.

66. American Express's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. In fact, American Express acted in accordance with American Express's intended procedures. In addition, American Express prioritizes processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

67. In addition, the willfulness of American Express's FCRA violations can be established by, for example:

   a. Congress enacted the FCRA in 1970, and American Express has had over 50 years to become compliant;

   b. American Express is a corporation with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that American Express determined that its conduct was lawful;

   c. American Express knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

   d. American Express voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

   e. American Express's FCRA violations were repeated and systematic;

f. American Express had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

g. American Express had notice of its defective dispute processing procedures through internal audits and litigation (*see, e.g.*, <u>Pongsai v. Am. Express Co.</u>, No. CV-19:1628, 2020 WL 6821314, at *3 (C.D. Cal. Oct. 23, 2020)), but chose not to meaningfully change its policies and procedures to comply with the FCRA..

## COUNT ONE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
### (EQUIFAX, EXPERIAN and TRANS UNION)

68. Plaintiff incorporates the preceding allegations.

69. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

70. Because of Equifax's, Experian's, and Trans Union's conduct, Plaintiff suffered actual damages including, without limitation, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

71. Equifax's, Experian's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
### VIOLATION OF FCRA, 15 U.S.C. § 1681i
### (EQUIFAX, EXPERIAN and TRANS UNION)

72. Plaintiff incorporates the preceding allegations.

73. Equifax, Experian, and Trans Union violated multiple sections of § 1681i including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the

disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide American Express with all the relevant information about Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

74. Because of Equifax's, Experian's, and Trans Union's violations of §1681i, Plaintiff suffered actual damages including, but not limited to, loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

75. Equifax's, Experian's, and Trans Union's violations of § 1681i were willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(AMERICAN EXPRESS)**

76. Plaintiff incorporates the preceding allegations.

77. On one or more occasion within the past two years, American Express violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

78. When Plaintiff disputed the account with Equifax, Experian, and Trans Union, American Express used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

79. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

80. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

81. Upon information and belief, the ACDV form is how American Express has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

82. Upon information and belief, Equifax, Experian, and Trans Union forwarded Plaintiff's disputes via an ACDV to American Express.

83. American Express understood the nature of Plaintiff's disputes when it received the ACDV form.

84. Upon information and belief, when American Express received the ACDV form containing Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

85. Upon information and belief, when American Express receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

86. Because of American Express's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages including, but not limited to, loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

87. American Express's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n. In the alternative, American Express was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

88. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from American Express under 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
## (AMERICAN EXPRESS)

89. Plaintiff incorporates the preceding allegations.

90. On one or more occasions within the past two years, American Express violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

91. As Plaintiff detailed in the previous Count, American Express has elected to use the e-Oscar system for its FCRA disputes received from the consumer reporting agencies.

92. When it received the ACDV forms from the credit-reporting agencies, American Express did not review any of the information that Plaintiff included in his dispute, which demonstrated that American Express's reporting of the account was inaccurate.

93. If American Express had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

94. American Express also ignored the other information that the consumer-reporting agencies provided on Plaintiff's disputes including the two-digit dispute code that the agencies listed on the ACDV form.

95. American Express knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

96. American Express does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

97. American Express understood Plaintiff's disputes and that Plaintiff was disputing ownership of the account.

98. Despite this, American Express did not update its incorrect reporting regarding the accounts and continued to inaccurately attribute them to Plaintiff.

99. Because of American Express's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages including, but not limited to, loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

100. American Express's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, American Express was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from American Express under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**GREGORY S. PETROSIAN**

By:    */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

Email: matt@kellyguzzo.com

*Counsel for Plaintiff*